FILED

2005 May-19  PM 01:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

BOBBY CLARDY,

      Plaintiff,

vs.                              CASE NO. CV-04-J-2204-NE

FORD MOTOR COMPANY,

      Defendant.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 25), and a memorandum of law (doc. 26) and evidence in support of said motion (doc. 27). The plaintiff filed evidence and a memorandum in opposition to said motion (doc. 30) and the defendant filed a reply (doc. 31). Having considered the pleadings, evidence and memoranda of the parties, the court finds as follows:

The plaintiff filed the complaint in this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), asserting that the defendant wrongfully calculated his years of service for purposes of credits for retirement benefits, in violation of 29 U.S.C. § 1132(a)(1)(B). The plaintiff further asserts he is entitled to statutory penalties due to defendant Ford Motor Company's ("Ford") alleged failure to respond to written requests for information.

## FACTUAL BACKGROUND

Plaintiff was employed by defendant from July of 1964 until at least August, 1976. Plaintiff depo. at 25. The plaintiff alleges he was either employed by defendant until April, 1980, or that he should receive additional credits toward retirement due to a cash settlement he received in 1980 pursuant to a consent judgment in a lawsuit he brought against Ford in 1978. The plaintiff was given full credit toward retirement for the year 1976, as well as credit for a portion of 1977, although he did not perform work for the defendant during that year.

The defendant allots one service credit toward retirement per year of work, in accordance with its collective bargaining agreement. *See* Murray depo., at 8-9.[1] The agreement defines a credit for a year of work as being paid during that year for more than 1615 hours. Murray depo. at 10. The plaintiff was given .6 credits for 1964, and full credit for the years 1965 through 1976. For 1977, the plaintiff was given .7 medical credits, plus .1 credit for his accumulated vacation time. Murray depo. at 11, 15-16. Thus, the defendant maintains that the plaintiff has 13.4 credits.[2] The plaintiff disputes this calculation is correct, but offers no alternative number of credits (Count I). Additionally, the plaintiff seeks statutory damages pursuant to 29 U.S.C. § 1132(c) due to the defendant's alleged failure to provide him requested information (Count II).

---

[1]Keith N. Murray is Service Credit Review Coordinator for the defendant.

[2]Defendant had calculated plaintiff's service credits at 12.5. In 1999, the plaintiff requested and received a review of these credits, and as a result of the review, the number of credits was increased to 13.4. Depo. of Keith N. Murray at 17; plaintiff depo. at 81-82.

The plaintiff was sent home from work by his supervisor on July 9, 1976. Defendant Tab B, exhibit 10, at 38-39. This was the last day he performed work for defendant. Plaintiff depo., at 25.[3]   When the plaintiff reported back to work the following Monday, he was told that the paperwork had to be resolved for him to be placed in an hourly position and to come back the following day. Defendant Tab B, exhibit 10, at 42-44; plaintiff depo. at 26-27. The plaintiff agrees he was removed from his job, but disputes he was terminated. Defendant exhibit 10, at 45. The plaintiff was thereafter placed on medical leave due to a non-work related condition. Defendant exhibit 10, at 46; plaintiff depo. at 28. He was never placed in an hourly position.

In September, 1976, the plaintiff returned to defendant and asked to be placed back to work. Defendant Tab B, at 29; plaintiff depo. at 29. However, he was not given a job and returned to medical leave. Plaintiff depo. at 30. Thereafter, the plaintiff was released to light work. Plaintiff depo. at 31. He was told there were no light jobs. Plaintiff depo. at 31. He was informed that the defendant decided "to let me quit." Defendant Tab B, exhibit 10, at 17, 26-27. The plaintiff then filed a lawsuit "seeking his job back," which resulted in the settlement agreement here in question. *See* plaintiff depo. at 32-33. The plaintiff was paid for 140 hours of vacation time in

---

[3]References to the plaintiff's deposition taken in 2005 are cited as "plaintiff depo." References to the plaintiff's deposition from the 1978 litigation are cited as "defendant Tab B, exhibit 10."

1977.  From August 1977, until March 1980, the plaintiff worked for employers other than defendant.  Plaintiff depo. at 19-23.  The defendant's records reflect that the plaintiff was rehired on April 23, 1980, and he was laid off on April 25, 1980.  Murray depo. at 42.

In the 1978 lawsuit, the plaintiff sought severance pay, medical disability payments, vacation pay, pay from July 1, 1976 to July 15, 1976, shift differential pay, and retirement pay and benefits.  Defendant Tab B, Exhibit 5.  That  suit ended with a consent judgment, entered March 24, 1980, which states only that the plaintiff would recover from the defendant the sum of $23,000.00.  Defendant Tab B, Exhibit 6.  An agreement and motion to amend consent judgment in May, 1980, stated that the sum of $23,000.00 was "in full settlement of any and all of plaintiff's claims and demands against defendant of any kind and description arising out of his prior employment by defendant."  Defendant Tab B, Exhibit 6.  The agreement also set forth the distribution of funds and was signed by attorneys for both parties.  Defendant Tab B, Exhibit 6; plaintiff depo. at 38.  As part of that settlement agreement, the plaintiff was both recalled to work for the defendant and laid off due to a reduction in force on April 25, 1980.  Plaintiff depo. at 41-43; defendant exhibit 8 to plaintiff depo.  He received his check for his share of the settlement proceeds at the same time he was recalled and laid off.  Plaintiff depo. at 42-43; defendant exhibit 9 to plaintiff depo.

According to the plaintiff, the settlement was for back pay for the difference between what he earned from other employers between 1977 and 1980 and what he

4

would have earned at Ford.  Clardy depo. at 35, 39, 49-50, 56-57.  Although his complaint in the 1978 case listed six different causes of action (including severance pay), the plaintiff testified that the total amount of the settlement was intended to be back pay.[4]  Plaintiff depo. at 50, 85-86.  He has no documents to support this claim.  Plaintiff depo. at 51.  If this amount was back pay, then the plaintiff would be entitled to additional service credits.  Murray depo. at 21-22.

The parties do not dispute plaintiff's entitlement to some amount of retirement benefits.  *See e.g.*, Murray depo. at 14.  The plaintiff disputes solely the amount to which defendant claims he is eligible.  *See e.g.*, plaintiff depo. at 67, 84.  Defendant asserts that the plaintiff has not received any benefits to date because the plaintiff has never provided defendant with a completed retirement application.  Murray depo. at 15, 18, 25.  The plaintiff agrees he has not completed an application.  Plaintiff depo. at 67.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[4]In his prior deposition, taken for the 1978 litigation, the plaintiff stated that he claimed $11,424 in severance pay.  Defendant Tab B, exhibit 10, at 28-29; plaintiff depo. at 52.  In his current deposition, upon review of that testimony, the plaintiff stated that this amount was a "typographical mistake" and that his severance pay should have been $32,000.  Plaintiff depo. at 52-55.  However, this is contradicted by the pretrial order entered in the 1978 litigation, which states under "Plaintiff's position" that the plaintiff "maintains that he is entitled to Eleven Thousand Four Hundred Twenty-Four and No/100 ($11,424.00) Dollars severance pay...."  Defendant Tab C.  It further states that the plaintiff claims "lost wages due to wrongful discharge..." *Id.*  Back pay is not mentioned. *Id.*

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro 56(e). In meeting this burden, the nonmoving party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## LEGAL ANALYSIS

The two issues before the court are whether the plaintiff is entitled to more than 13.4 years credit toward retirement benefits and whether the defendant has provided the plaintiff information in response to his requests. Because this case is brought under ERISA, the court applies the standard set forth in *Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132 (11th Cir.2004). Concerning the defendant's calculation of the plaintiff's service credits, the court must determine, *de novo*,

whether the plan administrator's decision was "wrong." *Bellsouth,* 373 F.3d at 1138; *see also HCA Health Systems v. Employers Health Ins. Co.*, 240 F.3d 982 (11th Cir.2001).  Based on the information that the plaintiff provided to the defendant, as well as this court, the court is of the opinion that the decision is not wrong, for the reasons set forth below.

The plaintiff argues he should have been awarded additional credits because the consent judgment was for back pay.  The plaintiff has no evidence to support this argument other than his own testimony.  *See* plaintiff depo. at 46-49.  Additionally, even if the court could find any evidence that the settlement was back pay for the time that the plaintiff was on medical leave, then the service credits for medical leave would have to be removed.[5]  Murray depo. at 44.  The consent judgment did not specify for what the plaintiff was compensated, but only stated how much of the total award would be an attorney's fee, how much was for taxes, and how much the plaintiff would keep.  The plaintiff could have made service credit a condition of that agreement, but did not.  He did, however, sign the agreement stating that the cash recovery was in settlement of **ALL** of his claims.  The fact that plaintiff now disputes that he intended to settle all of his claims without specifying why he was receiving a lump sum of cash does not create a genuine issue of material fact.  Plaintiff has

---

[5]In other words, to receive back pay, the plaintiff had to be able to work.  To receive medical leave, the plaintiff had to be unable to work.  The categories are mutually exclusive.  *See* Murray depo. at 44.

provided the court no evidence that the sum in question was intended to be back pay for which the defendant was obligated to calculate service credits for purposes of retirement.

When asked during his deposition whether he had any evidence besides his own testimony that he would be entitled to additional service credits, the plaintiff stated that he could not bring suit "for retirement prior to the first two settlements." Plaintiff depo. at 48. When asked to clarify this, the plaintiff explained that when he brought the first two lawsuits, retirement did not apply because he was not 55 years old.[6] Plaintiff depo. at 48. Rather, the plaintiff argues that the "Agreement and Motion to Amend Consent Judgment" entered into by the parties through their counsel specifically states that the payment is to resolve all of Clardy's claims "arising out of his prior employment by defendant." Plaintiff's brief in opposition at 6. Certainly, the case now before this court is a claim "arising out of his prior employment by defendant." Murray testified that from the documents he has seen, he cannot determine why the plaintiff was awarded a settlement of $23,000.00. Murray depo. at 22.

The defendant calculated the number of years of credit the plaintiff could receive toward retirement in accordance with its collective bargaining agreement. The

---

[6]The plaintiff brought a second suit against defendant seeking his job back and back pay from April, 1980 until 1983. Plaintiff depo. at 72-73; defendant exhibit 13 to plaintiff depo. This case was dismissed by the court. Plaintiff depo. at 73-74.

plaintiff does not allege that the calculations are mistaken or in contravention of that agreement, but rather that he is entitled to more.[7]   He states that because he was not terminated from defendant, his service credits should include the years 1977 through 1980.  Plaintiff depo. at 56-57.  The court does not need to determine whether the plaintiff was actually employed by the defendant from 1977 to 1980.  Under the collective bargaining agreement, one year's service credit requires 1615 hours of work.  The parties do not dispute that the plaintiff performed no work for the defendant from 1977 until 1980.  Murray testified that for "an hourly employee of Ford Motor Company, if you're paid less than 85 hours in a year ... you receive no credit at all." Murray depo. at 9.  Between 85 hours and 1615 hours, the collective bargaining agreement sets forth the number of paid hours required for each tenth of a credit.  The fact remains that the plaintiff had no paid hours for the years in question.  Under the facts of this case, the plaintiff is not entitled to service credits beyond those already awarded him by defendant.  *See Francis v. Rodman Local Union 201 Pension Fund*, 367 F.3d 937 (D.C.Cir.2004)(concluding that where plaintiff could have reserved right to additional benefits by including an agreement for hours of service for back pay in his settlement, but did not, no additional credits could be awarded.)

---

[7]According to the defendant's calculations, which the plaintiff does not dispute, with 13.4 service credits, the plaintiff's retirement benefit as of today is $192.27 per month.  Murray depo. at 34.  If the settlement monies were included in the calculation rather than the medical leave, the plaintiff would have a full credit for 1977 and a total of 13.6 service credits.  His retirement benefit as of today would be $196.43.  Defendant's responses to plaintiff's interrogatories, at 7.

9

The court has also considered plaintiff's claim that he is entitled to statutory penalties under 29 U.S.C. § 1132(c) based on defendant's failure to provide information.  The plaintiff alleges that he disputes "Ford's apparent contention that a February, 2003, letter, is responsive to an October, 2003, request for information." Plaintiff's brief in opposition at 10.  The plaintiff continues that the purpose of his October 9, 2003, letter was to ask defendant to explain "why Ford did not want to give Clardy benefits from 1964 through 1980..."  *Id.*  Even if the court could discern a logical argument from this, the plaintiff has offered no basis to require that the defendant explain why it does not want to do something.[8]  In February 2003, the defendant wrote the plaintiff and informed him as to the number of credits he had, why additional benefits could not be paid based on the information the plaintiff provided regarding the $23,000.00 settlement, and a phone number to call with further questions.  Defendant Tab A, exhibit 27.  *See also*  Murray depo. at 32, 34.  The plaintiff did not provide the defendant any additional information.

The plaintiff has not established that he requested any information which he was not provided, which the defendant had a duty to provide him.[9]  When the plaintiff

---

[8]Additionally, a transcript of a phone call between defendant and plaintiff's counsel shows that defendant did, in fact, explain to plaintiff's counsel why it could not award plaintiff any further service credits based on the information it had.  Defendant's Tab A, exhibit 28.

[9]The plaintiff continues this argument by stating that "[o]ther than "re-sending a non-responsive February, 2003, letter, Ford made no response to Clardy's counsel's October 2003 letter, thus leading to the filing of this suit on July 15, 2004.  This is just not acceptable behavior."  Plaintiff's brief in opposition, at 11. In response to a letter from plaintiff's counsel, defendant wrote plaintiff's counsel in March 2002, and stated that either the plaintiff could call

requested information, the defendant provided it.  *See e.g.*, defendant exhibit 12 to plaintiff depo.  The plaintiff even admits in his deposition that he received letters from defendant in response to his questions, but none of them included a person's name for him to address future correspondence.  Plaintiff depo. at 80-81.

"ERISA ... require[s] 'full and fair' assessment of claims and clear communication to the claimant of the 'specific reasons' for benefit denials.  *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 825, 123 S.Ct. 1965, 1967 (2003); quoting 29 U.S.C. § 1133; 29 CFR § 2560.503-1 (2002).  The defendant has repeatedly relayed all of this information to the plaintiff.  The defendant's records show that it has repeatedly spoken with plaintiff and counsel regarding his entitlement to benefits.  See defendant Tab A, exhibit 26.  The plaintiff does not allege that these records are inaccurate.

The plaintiff also complains that he has not received his retirement benefits, but the defendant points out that the plaintiff has never completed the application process.  Murray depo. at 14-15, 25.  The administrative record and plaintiff's testimony support this claim.[10]  *See* plaintiff depo. at 67-68.

---

the service center for information, or he could sign a release to allow defendant to provide plaintiff's counsel with information.  Defendant Tab A, exhibit 25.  The plaintiff has failed to place any request for information written by his counsel, in October 2003 or otherwise, into evidence.

[10]Because the plaintiff has never completed an application for retirement benefits, he has also failed to exhaust defendant's internal appeal system to dispute the amount of his benefits.  Plaintiff depo. at 69.

In consideration of the foregoing, the court shall grant the defendant's motion for summary judgment by separate Order.

**DONE** this the 19th day of <u>May</u>, 2005.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE